IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Anthony Valentine
Bernidine Valentine

Plaintiffs,

vs. CASE NO.: 8:14 cv 00652 EAK MAP

BAC HOME LOANS SERVICING, L.P.,
BANK OF AMERICA, N.A., as owner of
COUNRYWIDE FINANCIAL CORPORATION and
COUNRYWIDE HOME LOANS, INC.,
RON R. WOLFE AND ASSOCIATES, P.A., as successor to
FLORIDA DEFAULT LAW GROUP, P.L.,
MICALL BACHMAN, individually and as an employee of Bank of America, N.A.

Defendants,

______________________________/

**PLAINTIFFS' RESPONSE TO DEFENDANT BANK OF AMERICA, N.A's RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION TO AMEND JUDGMENT AND MOTION FOR RELIEF FROM JUDGMENT**

Come now the Plaintiffs, Anthony Valentine and Bernidine Valentine, pro se, and submit this response to Defendant Bank of America, N.A's Response and Opposition to Plaintiffs' Motion to Amend Judgment and Motion for Relief from Judgment, and in support thereof, state as follows:

## BACKGROUND

On March 18, 2014, the Plaintiffs filed a six count complaint, alleging that the Defendant, BOA (BANA), in association with two other Defendants, Micall Bachman and Ron Wolfe and Associates, P.A., acquired a summary judgment on a mortgage complaint as a result of fraud.

To support these claims, the Plaintiffs specifically stated that the fraud was based on violations

of the civil Racketeer Influenced and Corrupt Organizations Act (RICO); Civil Conspiracy; Abuse of Legal Process; the Florida Deceptive and Unfair Trade Practices Act (FDUTPA); the Florida Consumer Collections Practices Act (FCCPA); and the Fair Debt Collection Practices Act (FDCPA).

BANA filed a Motion to Dismiss on April 7, 2014, alleging, initially, that the Plaintiffs' complaint was predicated on the fact that the final summary judgment in the foreclosure case was improper because it was obtained as a result of a "forged assignment of mortgage". In addition, BANA, asserted several other defenses, including the following: (1) that the Plaintiffs' actions were barred as compulsory counterclaims to the state-court foreclosure case; (2) that the Plaintiffs' District Court complaint did not comply with 8(a) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.); (3) that the Plaintiffs' complaint was barred by the Rooker-Feldman Doctrine; and (4) that the Plaintiffs' RICO, FCCPA, FDUTPA, FDCPA and remaining counts should be denied because said counts were barred because statutes of limitations had expired. BANA also stated that some counts did not apply to BANA, because BANA was a national bank.

On April 22, 2014, the Plaintiffs' filed a request for an extension of time to file a Response to BANA's Motion To Dismiss. The request was granted and the Plaintiffs were given until May 5, 2014 to file their Response.

On May 5, 2014, at 11:41 a.m., the Plaintiffs filed a response to the Defendant's motion in the U.S. District Court building on Florida Avenue, in Tampa, Florida, and did so by hand, in the Clerk of Courts' office. Plaintiff Anthony Valentine verified this fact, with the Clerk, by phone, on May 15, 2014.

On May 7, 2014, Judge Kovachevich entered an order granting BANA's Motion To Dismiss, citing that the Plaintiffs did not file a response, that Rooker-Feldman applied to this case, and that the case should be barred as a compulsory counterclaim to the state foreclosure case.

On May 16, 2014, the Plaintiffs filed a Rule 59 Motion to Alter or Amend a Judgment and a Rule 60 Motion for Relief from Judgment or Order, under the Fed. R. Civ. P.

On June 26, 2014, Judge Kovachevich entered an order denying the Plaintiffs' Motion to Alter or Amend a Judgment and Motion for Relief from Judgment or Order, without prejudice, for the Plaintiffs' failure to comply with Local Rule 3.01(g).

On July 8, 2014, the Plaintiffs filed an Amended Motion to Alter or Amend a Judgment and an Amended Motion for Relief from Judgment or Order. The Plaintiffs requested in both orders that the Court would reconsider the dismissal rendered on May 7, 2007, because the Plaintiffs felt that an error had been made by someone in the court house since the Plaintiffs had timely filed their Response to BANA's Motion to Dismiss. The Plaintiffs also wanted the Court to consider the pleadings filed by the Plaintiffs, as the Plaintiffs felt that their Response provided information that was relevant, and would give the court the information the Court would need to deny the Defendant's Motion to Dismiss.

On July 17, 2014, BANA, by and through BANA's attorney, filed a Response and Opposition to Plaintiffs' Motion to Amend Judgment and Plaintiffs Motion for Relief from Judgment, citing the same issues cited in the Defendant's Motion to Dismiss.

**STANDARD OF REVIEW**

A motion to alter or amend a judgment under Rule 59(c) should be granted to correct an error, whether of law or of fact, and to prevent a manifest injustice. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (the four grounds of reconsideration are: (1) to prevent a manifest injustice; (2) to account for an intervening change in controlling law; (3) to account for newly discovered evidence; or (4) to correct clear error of fact or law). *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997). As long as the Rule 59(c) motion is timely filed, the courts have considerable discretion.

Concerning a motion for relief from judgment or order under 60(a), Corrections Based on Clerical Mistakes; Oversights and Omissions: the court may correct a clerical mistake or a mistake arising from an oversight, or omission, whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.

Under 60 (b), Grounds for Relief from a Final Judgment, Order, or Proceeding: On motion and

just terms. the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise. or excusable neglect:
> (2) omitted
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) omitted
> (5) omitted
> (6) any other reason that justifies relief

Under 60 (d), Other Powers to Grant Relief. this rule does not limit a court's power to:

> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
> (2) omitted
> (3) set aside a judgment for fraud on the court.

Notes of Advisory Committee on Rules—1946 Amendment:

> Fraud. whether intrinsic or extrinsic. misrepresentation. or other misconduct of an adverse party are express grounds for relief by motion under amended subdivision (b). There is no sound reason for their exclusion. The incorporation of fraud and the like within the scope of the rule also removes confusion as to the proper procedure. It has been held that relief from a judgment obtained by extrinsic fraud could be secured by motion within a "reasonable time," which might be after the time stated in the rule had run. *Fiske v. Buder* (C.C.A.8th, 1942) 125 F.(2d) 841: see also inferentially *Bucy v. Nevada Construction Co.* (C.C.A.9th, 1942) 125 F.(2d) 213... The amendment settles this problem by making fraud an express ground for relief by motion: and under the saving clause, fraud may be urged as a basis for relief by independent action insofar as established doctrine permits. See Moore and Rogers, *Federal Relief from Civil Judgments* (1946) 55 Yale L.J. 623. 653–659: 3 *Moore's Federal Practice* (1938) 3267 *et seq*. And the rule expressly does not limit the power of the court, when fraud has been perpetrated upon it, to give relief under the saving clause. As an illustration of this situation, see *Hazel-Atlas Glass Co. v. Hartford Empire Co.* (1944) 322 U.S. 238.

As stated in Plaintiffs' Response, Florida state appellate courts and Florida's federal courts have held that a complaint should not be dismissed due to statutory exemptions for banks.(office of the Ag, Dept. of legal affairs v. commerce comer. Leasing, LLC. 946 so.2d1253.1257-58 (FLA. 1st dca 2007)).

**ARGUMENT**

Reconsideration is appropriate here, as there was a clear error made concerning the posting of the Response timely filed by the Plaintiffs. *Norman v. Arkansas*, 76 F.3d 748, 750 (8th Cir. 1996) and *Anyanwutaku v. Moore*, 151 F.3d 1053, 1058-59 (D.C. Cir. 1998) both cases finding abuse of discretion where the Court refused to reconsider clear factual error).

First, this error is a legal and a factual error. Time limits on filing motions, etc., are set by law, and the extension of a filing deadline by a Judge is also a legal procedure. The Plaintiffs filed a timely Response. This is a fact. This fact also shows that the Plaintiffs complied with the law, per Judge Kovachevich's order granting the Plaintiffs' motion for an extension of time to file their response. However, for some reason, the Response was not promptly posted, leading the Judge to believe that the Plaintiffs had not filed the response on time, when in fact, they had. This constitutes both a legal and a factual error.

Secondly, as stated in the Plaintiffs' response, in regard to Rooker-Feldman, Rooker-Feldman does not apply in this case. Nor is this case a compulsory counterclaim to the state-court case.

BANA, in its Response and Opposition to Plaintiffs motions, regarding Rooker-Feldman and the supposition that the Plaintiffs' complaint constituted a compulsory counterclaim states: " Neither the Response...nor the Amended Motion to Amend Judgment and Amended Motion From Relief from Judgment, refute this conclusion".

However, in section two, under Introduction, of the Plaintiffs' Response to Defendant's Motion to Dismiss, the Plaintiffs state quite clearly, that "...the claims in this case are not compulsory counterclaims to the 2007 foreclosure suit".

In section 3, of the Plaintiffs' Response to Defendant's Motion to Dismiss, the Plaintiffs state that the statements made by the Plaintiffs in their original complaint, along with the items of evidence attached to same, are more than enough to show that the Plaintiffs' claims are not just inferred or conceived, but plausible and truthful.

**ROOKER-FELDMAN DOES NOT APPLYIN THIS CASE**

In the second, third, fourth and fifth paragraphs of section 3, of the Plaintiffs' Response to Defendant's Motion to Dismiss, the Plaintiffs provide exact instances of fraud committed, in concert, by BANA and the other Defendants, using said fraud claims and other evidence, to refute the Defendant's claims that Rooker-Feldman applies, and to show that the Plaintiffs' District Court case is not a compulsory counterclaim to the state-court case, as the fraud issues were not know by the Plaintiffs, and were kept hidden from the Plaintiffs by the Defendant and the Defendant's co-Defendants.

The Plaintiffs have never stated that the federal case was based solely on a forged assignment of mortgage, but rather, a plethora of fraudulent activities, of which forged assignments of mortgage are but a part, and, to this day, the allegations of fraud have not been disputed by BANA. Also, the Plaintiffs were not even aware of the fraudulent assignment of mortgage until 2009, while they were searching Hernando County records after the state-court judgment was rendered. The foreclosure judgment was entered in December of 2008.

In the Plaintiffs' Amended Motion for Relief from Judgment or Order, the Plaintiffs state, in the fifth paragraph under "Argument," "The Plaintiffs...address section 8(a), Rooker-Feldman, and any perceived inefficiencies, *denying* all of the Defendant's claims.

In that same Amended Motion, the Plaintiffs outlined the 4 circumstances determined by the U.S. Supreme Court, regarding Rooker-Feldman. To show the scope within which the doctrine can be implemented, the Court stated that, The *Rooker-Feldman* doctrine, held today, is confined to cases of the kind from which the doctrine acquired its name, to wit, cases:

:

1. brought by state-court losers
2. complaining of injuries brought about by state-court judgments

    3. rendered before the district court proceedings commenced, and

    4. inviting district court review and rejection of those judgments.

The four circumstances mentioned above, outlined by the US Supreme Court, which are necessary to allow a District Court case to be barred by Rooker-Feldman, were intended for clarification after the Exxon Mobile case. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* 544 U.S. 280, 291 (2005).

For Rooker-Feldman to apply, all four circumstances must exist.

The Plaintiffs' current federal case only meets two of the four criteria. The Plaintiffs were losers in state court, and the state-court case ended before the District Court case began. The Plaintiffs are not seeking a review of the state-court judgment, nor are the Plaintiffs complaining about injuries brought about by the state-court judgment. Since only 2 criteria are met, Rooker-Feldman does not apply, and even if a third circumstance applied to the Plaintiffs' case, Rooker-Feldman still would not apply. *Kougasian v. TMSL, Inc.* 359 F.3d 1136, 1139 (9th Cir. 2004), where the ninth Circuit held that:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

In the current District Court case, the Plaintiffs are complaining about injuries sustained as a result of the fraudulent activities of BANA and BANA's co-conspirators, not about injuries caused by errors on the part of the state-court. *Gaines v. Fuentes* (92 U.S. [(2 Otto)] 10, 23 L.Ed. 524), *Noel v. Hall* 341 F.3d at 1161-62.

The issue of whether or not the Plaintiffs' claim is barred by Collateral Estoppel has also been addressed.

The elements of Collateral Estoppel are: (1) an identical issue must have been presented in the prior proceeding; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two

proceedings must be identical; and (5) the issues must have been actually litigated.

Under Collateral Estoppel, the issue is whether or not the claims raised in a District Court case could or should have been raised in a related state-court case. As the Plaintiffs have stated, the information supporting the truth, as to whether or not fraud was being committed was not made available to the Plaintiffs until 2011 and 2012. Again, while the Plaintiffs had various pieces of the fraud puzzle, the pieces, in their entirety were not available until 2012. The issues in the federal complaint were not litigated in the state-court case.

In the amended motion, pursuant to Rule 60(a)(b)(1)(3)(6)(d)(1)(3), 60(b)(3) deals with fraud, both extrinsic and intrinsic.

The Plaintiffs' District Court case has focused on the fraudulent activity committed by BANA and BANA's alleged co-conspirators in the state-court foreclosure action, and the fact that this information was not made available to the Plaintiffs, in its entirety, until May 2011 and June 2012. Prior to May 2011 and June 2012, the Plaintiffs had bits and pieces that the fraud had been committed, but they had no proof until these times. BANA has never denied any of the claims of fraud made by the Plaintiffs.

BANA was involved in the commission of the filing of false and forged documents, sham pleadings, mail and wire fraud and more. A pleading is considered sham only "when it is inherently false and based on plain or conceded facts, clearly known to be false at the time the pleading was made." *Destiny Const. Co. v. Martin K. Eby Const.*, 662 So.2d 388, 390 (Fla. 5th DCA 1995)

The Defendant, as CWHLI, filed a foreclosure complaint in which the Defendant, as Plaintiff, falsely stated that CWHLI was the owner and holder of the mortgage and note on the Plaintiffs', as Defendants, home.

With regard to Rule 8(a), the Plaintiffs state, in the original complaint, under Allegations, that " the Plaintiffs bring these claims for damages that they have suffered by reason of the attempts of the

Defendants, their associates and co- conspirators to wrongfully remove them from their home of more than seven years.

Secondly, the Plaintiffs also state in that same paragraph that the activities of the Defendants have been and are unlawful racketeering and or conspiracy, that creates a situation for requiring relief for the Plaintiffs, by virtue of the harm caused to Plaintiffs by actions committed by the Defendants....

Under allegations-page 2: it is stated that "Plaintiffs are seeking an order from this court finding that the judgment of foreclosure was obtained in violation of their constitutional rights, was obtained in contradiction of Florida and federal laws, was obtained by fraud and the Plaintiffs wish to get an order setting aside the judgment of foreclosure that was fraudulently obtained and obtained in violation of the US and state constitutional rights of the Plaintiffs, including, but not limited to 5th and 14th amendment, due process and constitutional violations; and to set aside the judgment as an independent action..."

**FDUTPA DOES APPLY TO BANA IN THIS CASE**

Contrary to the Defendant's statement that FDUTPA may not apply to banks or savings and loan associations regulated by federal agencies, the FDUTPA does apply to BANA in this case, because BANA acquired CWF after the Plaintiffs loan was in default.

The Plaintiffs also stated that the FDCPA governs most abuses by debt collectors and debt collection activities, however, when those activities are deceptive or unfair, FDUTPA may apply particularly when federal law does not. For instance, FDUTPA statutes may provide remedies in situations that are not covered by federal debt collection statutes. The FDUTPA states that in 501.204 unlawful acts and practices:

1) Unfair methods of completion, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

The Plaintiffs also noted in the Plaintiffs' response that most debt collections statutes do not cover

some forms of debt collection, such as, foreclosures, repossessions, and evictions, but the FDUTPA may apply. Also, and more importantly, the state court foreclosure case was filed by CWHLI. CWHLI described itself to the Plaintiffs as the servicer of the loan...

After BANA purchased CWF in July of 2008, BAC serviced the Plaintiff's loan. Finally, in 2011, BANA took over the servicing of the loan, and while the fact is that BANA is a national bank, the FDUTPA still controls because the Plaintiffs' debt was in default at that time.

In addition, a loan servicer may be liable for unfair and deceptive trade practices under 501.204, Florida statutes, when it calculates and collects incorrect amounts. (see Sundance Apts. 1, Inc. v. Gen. Elect. Corp., 581 F. supp. 2d 1215 (s.d. Fla. 2008)). (Coursen v. JP Morgan Chase, et al)" except in matters governed by the federal constitution or by acts of congress, the law to be applied is the law of the state" (Keesee v.Bank of Am. Na, 371 F. Supp. 2d 1370, 1372 (m.d. ha. 2005)).

The FDUTPA is based upon a state statute and is not governed by the federal constitution or by acts of congress.

Finally, concerning this matter, a claim for damages under FDUTPA has 3 elements: 1) A deceptive act or unfair practice; 2) causation; 3) actual damages. (Virgilio v. Ryland Group, Inc., 680 F. 3d 1329,1338 n.25 (11th Cir. 2012) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860,869 (fla dist. Ct. App. 2006)). A practice is unfair under FDUTPA if it "offends established public policy or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *PNR, Inc. v. Beacon Props. Mgmt. , Inc.* 842 So. 2d.773, 77 (fla. 2003)). Here, the Plaintiffs allege that the Defendants violated FDUTPA by using fake identities and manufactured documents to deprive the Plaintiffs of their homestead, their credit ratings, and income from investment properties (Coursen v. JP Morgan Chase and Co., et al), therefore, because of BANA is not exempt, the Plaintiffs' FDUTPA claim should not be dismissed.

**<u>BANA HAS NO SECURITY INTEREST IN THE PLAINTIFFS' HOMESTEAD</u>**

The Defendant, in its Motion To Dismiss and the Motion in Response and Opposition

continues to suggest that it has a security interest in the Plaintiffs' homestead, but under FCCPA and other Florida and federal laws, BANA never had a security interest in the Plaintiffs' homestead. Barron's Law Dictionary describes and defines a "security interest" as follows:

> An interest in real or personal property which secures the payment of an obligation. Under the Uniform Commercial Code security interests are limited to personal property and fixtures. See U.C.C. §1-201 (37).
> At common law, security interests are either consensual or arise by operation of law. Security interests that arise by operation of law include judgment liens and statutory liens. The Uniform Commercial Code does not govern most interests that arise by operation of law. The clearest examples of security interests are the mortgage , the pledge and the conditional sale. The mortgage involves the situation wherein the mortgagor gives the mortgagee a security interest in a specific asset, which is usually real property. The pledge deals with the situation wherein the creditor takes possession of the property. The conditional sale involves the situation wherein the seller gives credit and takes a security interest. The Uniform Commercial Code ignores differences of form and treats all secured interests in personal property simply as "security interests." See U.C.C. §9-102.

BANA never had a mortgage on the Plaintiffs' home. In addition, the Plaintiff's home was in foreclosure, and the debt was in default when BANA acquired CWF, and so, BANA is merely a debt collector and has no security interest in the Plaintiffs' residence at all.

In further support of their position on this matter, the Plaintiffs, in their initial complaint to the district court, attached a document provided by BANA, in particular, Exhibit H, which states that BANA is not the owner of Plaintiffs' homestead. and in further support of same, the Plaintiffs also attached Exhibit I, which is the front page of the Plaintiffs' Freddie Mac account website, which states that Freddie Mac has owned the Plaintiffs' loan since February of 2007. Discovery would yield even more concrete evidence to support this fact.

## FDCPA and FCCPA SHOULD NOT BE TIME BARRED

As the Plaintiffs stated in their response, both the FDCPA and FCCPA claim should be exempt from their statute of limitations under section 95.031, FL statutes. Section 95.031 of the Florida statutes (supp. 2000), provides, concerning computation of time:

**95.031 Computation of time.**--Except as provided in subsection (2) and in s. 95.051 and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.

(1) A cause of action accrues when the last element constituting the cause of action occurs. For the purposes of this chapter, the last element constituting a cause of action on an obligation or liability founded on a negotiable or nonnegotiable note payable on demand or after date with no specific maturity date specified in the note, and the last element constituting a cause of action against any endorser, guarantor, or other person secondarily liable on any such obligation or liability founded on any such note, is the first written demand for payment, notwithstanding that the endorser, guarantor, or other person secondarily liable has executed a separate writing evidencing such liability.

(2)(a) An action for fraud under s. 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3), but in any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.

Since the Defendant used fraud to secure a judgment in the state-court case, the Plaintiffs' FDCPA and FCCPA claims are not time barred, and these claims should not be dismissed.

## BANA IS A DEBT COLLECTOR

The Plaintiffs continue to maintain that the Defendant achieved success in the Defendant's 2007 foreclosure case as a result of forged documents, sham pleadings and other fraudulent activities. The FDCPA covers the activities of a debt collector. There is a two part definition of a debt collector:

1) any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose which is the collection of debts or 2) who regularly collects or attempts to collect directly or indirectly debts owed or due or asserted to be owed or due another. 15 u.s.c. also: ...persons who service debts which are not in default (e.g., services of mortgages and student loans). This exemption does not operate in favor of such entities when they acquire a loan after default.

Under the FDCPA rules, and this definition, BANA is a debt collector and is due no exemption, and as a result, the Defendant's motion to dismiss this count should be denied.

**CIVIL CONSPIRACY SHOULD NOT BE TIME BARRED**

The Plaintiffs claim for civil conspiracy is not time barred, because the Plaintiffs were only able to find out about the fraudulent activities, of the Defendant, with certainty, which included, but was not limited to, the filing of shame pleadings, manufacturing of documents and committing perjury, in June of 2011 and May of 2012.

The elements for Civil Conspiracy are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So.2d 1157, 1159-60 (Fla. 3d DCA 2008).

Evidence giving rise to the existence of these fraudulent activities started with the Plaintiffs' discovery of the fraudulent assignment of mortgage in February of 2009 which was dated January 8, 2008 and was assigned from Market Street Mortgage to CWHLI. Several people were involved in the production of that document, the May 5, 2011 AOM, referenced below, and other documents as well.

The Defendant's deliberate hiding of critical information prevented the Plaintiffs from finding out the truth about the actions of the Defendant, through verified documents, until June of 2011, when the Plaintiffs received the previously mentioned letter from BANA stating that BANA was not the owner of the Plaintiffs' homestead. In addition, in May of 2012 the Plaintiffs were told, by Freddie Mac, over the phone, to go to the Plaintiffs' Freddie Mac account website, where Freddie Mac was finally including the dates on which Freddie Mac acquired properties, after, it seems, Freddie Mac and Fannie Mae came under heavy scrutiny because of the way they were operating. *See U.S.D.C.S.D.N.Y. cases* 11 cv-9201, 9202. After more than 5 years of trying, the Plaintiffs finally got the very information they had been trying to get. It turned out that Freddie Mac had owned Plaintiffs' property since February 9, 2007. The Plaintiffs had made 15 to 20 attempts minimum, to get the date that Freddie Mac had acquired their loan, but they were unable to do so until May of 2012.

Prior to May of 2012, the Plaintiffs were told to call different places to get the information, but were never given all of the information. CWHLI and BANA customer service, at different times, gave the Plaintiffs part of the information, which was that Freddie Mac was the owner of the Plaintiffs' note and mortgage, but the Plaintiffs could never get the date on which Freddie Mac became the owner of those documents. Customer service would tell the Plaintiffs to call Freddie Mac, then Freddie Mac would tell the Plaintiffs to call the servicer, because the agreement between them(Freddie Mac) and the servicer required that the Plaintiffs get that information from that servicer.

Furthermore, in support of the Plaintiffs' civil conspiracy claim and abuse of process claim, the Plaintiffs' have stated, and shown the evidence in exhibit 'G' of the original complaint, that BANA, in an attempt to support BANA's proof of claim in the Plaintiffs bankruptcy case, dated February 17, 2012, provided a fraudulent assignment of mortgage dated May 5, 2011 from MERS to Bank of America. As this action occurred in May of 2011, involves fraud and forgery and more, this Civil Conspiracy count should not be time barred, and the Defendant's motion to dismiss this count should be denied.

**ABUSE OF PROCESS**

The elements of a cause of action for abuse of process under Florida law are: (1) an illegal, improper, or perverted use of process by the defendant; (2) an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and (3) damages to the plaintiff as a result. *Valdes v. GAB Robins N. Am. Inc.*, 924 So. 2d 862 (Fla. 3d DCA 2006).

The bankruptcy fraudulent activity occurred in 2012. It occurred in the context of a bankruptcy proceeding. An AOM was signed by four known robo signers; their names are Luis Roldan, Malik Basurto, Bud Kamyabi and Chester Levings. This act occurred on or about May 5, 2011. The Plaintiffs filed the district court case on March 18, 2014. The Plaintiffs assert that the AOM created on May 5, 2011 was one of the latter fraudulent acts in a series of fraudulent activities, used by the Defendant to abuse the legal process, commencing in October 2007, when the Defendant, with

others, filed the foreclosure action which was won as a result of various wrongful and fraudulent acts, committed by the Defendant and co-Defendants, which included violations of the FDUTPA, FDCPA, FCCPA, Civil Conspiracy, Abuse of Process and violations of the RICO act. The Defendant, in the Defendant's motion in response and opposition, states that the Plaintiffs' motions should be denied because they are barred by the Rucker-Feldman Doctrine, because of the fact that they are compulsory counterclaims to the state-court case, that they are barred by collateral estoppels, and the motions failed to comply with rule 8(a), Fla. R. Civ. P., and that the FDUTPA, FCCPA, FDCPA and RICO are either time barred by statutes of limitations or don't apply to the Defendant, because the Defendant is a National Bank. The Plaintiffs disagree.

Because of all of the facts stated, heretofore, by the Plaintiffs, in support of the Plaintiffs' complaint and motions, the Defendant's motions should be denied.

## RICO SHOULD NOT BE TIME BARRED

Where RICO is concerned, the predicate acts start with the initial predicate act and includes any violation committed after the initial predicate act, but within 10 years. Here the initial predicate act started on October 16th of 2007 with the filing of a foreclosure complaint that contained at least one untruthful statement; to wit, that the Defendant, who was at that time one of the Plaintiffs, as CWHLI, stated that it was the owner and holder of the Plaintiffs', who were at that time the Defendants, note and mortgage.

Yet the violations did not start with the filing, but with the method of filing. The Plaintiffs, who are now the Defendants, electronically filed the complaint with the Hernando county clerk, other fraudulent documents were either filed electronically or sent through the mail.

The fraudulent AOM, dated May 5, 2011, submitted in the Plaintiffs' bankruptcy case was one of the more recent RICO violations (forgery, perjury, bankruptcy and mail fraud). More are outlined in the Plaintiffs' Response to the Defendant's Motion To Dismiss. The Plaintiffs' complaint was filed in March of 2014. This date falls well within the Defendant's statute of limitations time frame for the

RICO claim, as the foreclosure judgment was delivered in December 2008. The time line included, but was not limited, to the following:

2007, foreclosure case filed,

2008, fraudulent AOM and summary judgment granted,

2011, second fraudulent AOM, bankruptcy fraud, BANA sends letter confirming that BANA is not the owner of the Plaintiffs' property,

2012, Freddie Mac provides the Plaintiffs with the date that Freddie Mac became the owner of the Plaintiffs' note and mortgage, tying all of the loose ends together.

Therefore, the RICO claim should not be dismissed, as BANA's last predicate act, prior to the Plaintiffs' filing of the federal complaint, was the fraudulent AOM in May, 2011, less than four years from the time the Plaintiffs' federal complaint was filed in March 2014, and within ten years from the initial predicate acts in 2007.

Finally, BANA continues to commit fraud, fraud upon the court and wire fraud with its assertion, by and through its attorneys, that it has a security interest in the Plaintiffs' homestead, which it does not have. The security interest belongs to Freddie Mac.

The Plaintiffs' claims of fraud started with the electronic filing of the foreclosure complaint, in October of 2007, in which the Defendant, who was, at that time, CWHLI, stated that CWHLI was the owner and holder of the note and mortgage for the subject property, which was, at that time, the Plaintiffs', who were then the Defendants, home. The complaint also stated that CWHLI had lost the note and mortgage, which CWHLI claimed they owned, and wanted to reestablish these items. CWHLI never lost the note and mortgage, because CWHLI never owned the note and mortgage, or had it to lose.

Next, BANA, as CWHLI, forged an AOM dated January 8, 2008, which was filed in Hernando County, stated this fact in the Plaintiffs' original District Court complaint, and addressed this fact in the Plaintiffs' Response to the Defendant's Motion To Dismiss.

Then, BANA, as CWHLI, and later as BANA, made repeated attempts to sell the Plaintiffs' home, even though BANA had no legal right to do so. BANA, as CWHLI, obtained the foreclosure summary judgment fraudulently, and so, was never entitled, legally, to sell the Plaintiffs' home.

From the time of the filing the foreclosure complaint in October of 2007, through the time that its Motion To Dismiss was filed, BANA has continued to commit fraud and fraud upon the Court. BANA never owned the Plaintiffs' note and mortgage, BANA never had a valid AOM, BANA never had a security interest in the Plaintiffs' homestead, by BANA's own admission, yet, BANA continues, by and through BANA's attorneys, to make the untrue claim that BANA has a security interest in the Plaintiffs' home. BANA has no security interest in the property.

BANA committed the initial and other acts of fraud in 2007. Then BANA committed another act in 2008 with the forging of the first AOM. Next, in 2011. BANA forged the second AOM.

During this time, BANA was filing fraudulent documents, including, but not limited to, various affidavits and motions, in an attempt to support its claims, was committing perjury, fraud, wire fraud, mail fraud, bankruptcy fraud and more.

These acts clearly support the Plaintiffs' RICO claim, Abuse of Process and Civil Conspiracy claims, FDUTPA, FCCPA and FDCPA claims.

The Plaintiffs' motions under Rules 59 and 60, Fla. R. Civ. P., and the Plaintiffs' initial complaint, which falls under this District Court's jurisdiction, should granted, and the Defendant's current motions, and Motion To Dismiss, for the previously stated reasons, should be denied.

Wherefore, the Plaintiffs request that this Honorable Court would deny the Defendant's Response and Overrule the Defendant's Opposition to Plaintiffs' Motion to Amend Judgment and Motion for Relief from Judgment, and deny the Defendant's Motion to Dismiss, or in the alternative, grant the Plaintiffs leave to amend the Plaintiffs' original complaint or amend the Plaintiffs' response to the Defendant's motion to dismiss.

Anthony Valentine, pro se
3381 Landover Blvd
Spring Hill. Florida 34609
352.835.1964
E-mail: b_avalentine@mail.com

Bernidine Valentine, pro se
3381 Landover Blvd
Spring Hill, Florida 34609
404.641.0831
E-mail: b_avalentine@mail.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by U.S. Mail to Junaid N. Savani of Liebler, Gonzalez & Portuondo, attorneys for Bank of America, N.A., et al, at Court House Tower-25th Floor, 44 West Flagler Street. Miami, FL 33130, on this 11th day of August, 2014.

Anthony Valentine, pro se

Bernidine Valentine, pro se